The next case is United States v. Batista. The next case is United States v. Batista. Good morning, Your Honors. May it please the Court. I represent Esteline Batista on his appeal from his 12-month sentence for violation of probation. The district court found that Mr. Batista violated his probation by committing New York State misdemeanors arising from a traffic dispute. The misdemeanor charges were dismissed in state court, and we do not contest the violations. We do challenge the court's sentence of 12 months in prison, more than the seven months requested by probation, because the sentence was based in part on the court's unfounded assumptions that Batista's prior use of prescribed oxycodone and medical marijuana for spinal injury pain was illegitimate, and he did not really suffer pain but was abusing drugs. These incorrect assumptions had already been put to rest months before, indeed a year before, by reports from probation, reports from a physician and nurse practitioner at his clinic, and a hearing before Judge Caproni. And they were contrary to the undisputed record, which established that Batista was seriously injured in a work accident for which he had received a settlement of more than $700,000. He had had one spine surgery, but he needed another. And his oxycodone was prescribed by a nurse practitioner at Top Care, who was authorized to treat pain and prescribe the medication. Didn't the court credit your client's representation that he had weaned himself off oxycodone and noted that he hadn't tested positive for it since October 2024? Yes, the court did. But the court still held against him that he had not, a year before, provided a letter from a treating physician. That is what the court was angry about. And the court expressed this specifically at page 176 to 177, that he had never provided a letter from his treating physician. It wasn't from any provider, as the government argues, that the court asked for. It was a treating physician. And it had been explained long back by the defense and by probation, who said this was all correct. That's not an erroneous finding of fact, is it? The district court was concerned about the lack of a treating physician signing off on both the oxy and the marijuana. And I don't see how that's a finding of fact. That's not something that the district court was concerned about. Well, that's not the finding of fact. The finding of fact that we challenge is clearly erroneous was its finding that he was malingering. But in terms of its insistence on a treating physician, that was simply based on an unfounded assumption that only a physician could legitimately treat his pain and prescribe him the oxycodone. And that was erroneous. That was actually true. I read the transcript more to be concerned by the fact that there was no professional who had ever said both of these things, was monitoring and prescribing both of these things together. The nurse practitioner first learned of the fact that he was using medical marijuana from the probation department, right? Right. But then the court did receive both a report from the nurse practitioner, who was his treating provider, that he was completely on board with this regimen, that he found this regimen acceptable, and that it was common. And then a physician from the practice, who was in the same practice, who verified that he was being treated there, who obviously looked at his record from her letter, said that both oxycodone and marijuana were more effective, because marijuana would help a person wean off of oxycodone ultimately. And then when the court was presented with all of this, the court did say, OK, I agree. I will let this go. Probation said all of this was correct, that his provider was the nurse practitioner, which is very common. Something like a quarter of patients are seen by nurse practitioners or non-physicians now, and they're authorized to prescribe medication and to treat pain. And so was this one. So it was just simply unfair. Mr. Bautista could not comply with that demand, because he Was the nurse practitioner aware of Mr. Bautista's history of addiction and criminal history? I mean, those are the things that the district court was concerned about. And I think the concern, whether we agree with it or not, was that no one physician had sort of signed off on the specific circumstances of Mr. Bautista's case. Well, actually, one physician had signed off, had said she approved it. But she wasn't personally treating him. But that was the court's concern. But that concern was put to rest at a hearing in which all of this was explained. It was explained to the court at the February hearing that Mr. Bautista couldn't have gotten a prescription from the treating clinic, because medical providers didn't prescribe medical marijuana. It was only prescribed under the state program. He had been referred to that state program by his court-appointed therapist. And that's in the record of the transcript. That's at page 823. All of this was put to rest. And the district court was also concerned, wasn't she, Ms. Cassidy, that the defendant had made representations in the past that he was going to stop using drugs? Well, he was trying to stop. This is the chronology. In 2017, he was injured. He was given the oxycodone prescription. And he was always on prescription, by the way, even at the time of the first sentencing. They were all prescription medications. He was never taking street oxycodone. It was always prescribed by medical providers. At that time, he did want to wean off, because anybody taking that, even if they need it, wants to wean off, they know it's a dangerous drug. So he was trying to wean off. But then he had surgery. After he was sentenced, in the fall of 21, he had a spine surgery. And he still needed another one. That didn't solve his problems. He was prescribed oxycodone again and began taking it. And even at the time he appeared before Judge Caproni, he was weaning down, because they brought the prescription in, and it showed that he'd taken half of what he should have taken. So she understood all that. But what she did was she just had this fixation about him not having a doctor treating him. And she blamed that on him. Well, what I'm asking you is that I got the sense from reading the transcript that the judge felt that his representations that he was going to try and wean himself from drugs was not made in good faith. I mean, I think that's the impression she had. And that's why she wanted the verification from a treating physician, as well as anybody else he was coming forward with, because she had these doubts about it. Now, first of all, tell me whether I have misunderstood what happened before the district court. And if I have not, why we would view that as error? No, I don't think you have misunderstood what her concern was. Why would it be error for a district court who feels that the defendant has been representing to her that he's going to try and wean himself from drugs, and instead he's using them regularly? And she's troubled by that. Because she was simply wrong to blame him for the fact that he had spinal pain and needed these drugs for his pain, and was legitimately prescribed them by a legitimate provider. Whether it was a doctor or a nurse practitioner doesn't matter in terms of the medical licensing,  She was operating on older assumptions about what proper medical care was. She obviously thought that maybe he wasn't getting proper medical care, that he should have had a doctor. But he's a poor person. And often, what they get when they go to a clinic is a nurse practitioner. And is there any concern that all of this contributed to his involvement in? What was a disturbing road rage incident? Well, maybe there was concern about that. I mean, he was. And that's another thing. He was still using the oxycodone when he was involved in that road rage incident. And the judge held against him that he could move. He stood, and he walked, and he didn't wince in pain on the video. Well, it's that that she wants to make sure doesn't happen again, the incident like the road rage incident, which, as I said, was quite disturbing. And to the extent that she was concerned about his drug use, she's viewing them as tied together. And I'm just trying to find out why that isn't a legitimate thing for a district court who's got somebody on supervision to be concerned about. It's legitimate to be concerned about, but he had complied. He had provided everything the judge had asked for. And at that February hearing, she accepted it. Probation said, everything they're saying is correct. I have no problems with him. He's really trying. And he was, in fact. And she found that he had weaned himself off. She accepted that. She'd seen the drug test by the time she sentenced him. But she just couldn't let go of this just kind of gut feeling she had that he hadn't complied with what she wanted, that he had never provided a letter from a treating physician, when he couldn't do that because he didn't have a treating physician. And so it was just unfair, and it was based on assumptions that were just inaccurate about the way medical practice works. One last question, Anne, unrelated to your specific argument. But you said your client recovered $700,000 in a settlement. Right. And did he receive that? He did receive it. How is he qualifying for legal aid assistance? Not that we're not delighted to see you, but always. Yeah. I don't think anybody ever raised that. Nobody ever asked that. I mean, I don't know if that kind of. The government's smiling. The government didn't ask it. OK, thank you, Ms. Cassidy. Good morning, Your Honors, and may it please the Court. I'm Assistant United States Attorney Lauren Phillips. I represented the United States in the district court, and I represent the United States on appeal. Judge Caprone did not abuse her discretion in sentencing Batista on a revocation of probation to 12 months imprisonment. Batista was convicted in 2019 of possession of a firearm after a felony conviction. For years, Judge Caprone gave him break after break in light of his election. Then, Batista, angry after a traffic dispute, cut off another car on the highway, got out of his car, pointed what appeared to be a firearm at another driver. When that driver sped off and escaped, Judge Batista followed him, leading him on a high-speed car chase for over 20 minutes on the highway and on a side street, terrorizing the driver and his fiancee in the car. Judge Caprone revoked his probation. In revoking his probation, she responded to arguments from defense counsel that his drug history and his drug addiction should mitigate a sentence in this case. She pointed out how it was not factually accurate that he had maintained his sobriety from opioids. She pointed out that there was no treating provider who had opined that it was the proper course of treatment on these facts here to use both opioids and medical marijuana. And she pointed out how he had failed to maintain a job, how he had told probation that he had quit after getting a very large settlement, as Your Honor pointed out. On these facts, Judge Caprone's finding that Batista had violated his probation and that a 12-month sentence is merited was well-grounded in the record. She relied on her experience and the representations that counsel made here. Your Honor, the facts found here were not erroneous or clearly erroneous by any means. Judge Caprone did not abuse her discretion in finding that on these facts, a 12-month sentence was merited. Unless the court has any questions, the government would rest on its admission. Could you address whether she had enough information before her to question, as she appeared to, whether he was actually experiencing pain or whether he was faking it? Yes, Your Honor. As we put it on our brief, the way that I understood her statement at the time of the sentencing is that the pain question is a broader issue. It goes to his failure to maintain a job, as she has repeatedly emphasized from the very beginning of this case, how important it is to maintain a full-time job, how he was using his pain as an excuse throughout this time. As she pointed out, he claims he couldn't possibly hold down a job. She had several years of experience, several years of these excuses in front of her. She also had several videos. It's a pretty ample record in terms of how exactly he was maneuvering then, as well as how he had maneuvered sort of in the court appearances in front of her and how he was that day. Judge Caprone's finding was well-supported by the record, but I do think it's important to recognize it's in the context of, my pain is so great, I couldn't possibly have a job, which she just found was not supported by the record here. Did she ever request that he have a doctor's assessment of whether he was disabled produced? Your Honor, I'm not sure on this record here. I think she did point out that it was never produced to her. I don't think that it was sort of ever supported since the court, is my understanding. Whether she made an affirmative request to that, I'm just not sure, Your Honor. The district court did say that she was letting go of the physician and drug issue. And that seemed to, I guess, sort of cut off the point of finding a treating physician to give the sort of thing that she was looking for. But then she brings it back up, and it seems to be a factor in the 12-month sentence. Doesn't that seem unfair? She said she was letting something go, so everyone thought that that is water under the bridge. And I don't know if there was an ongoing attempt to get a treating physician to get a note that she was looking for. But then it comes up, and without a chance to sort of address her concern. Yes, Your Honor. She does say she lets it go. She doesn't revoke his probation in light of this. Again, Judge Caponi, as the record reflects, particularly in the sealed appendix, she was repeatedly asking for some sort of written documentation from a treating provider. They then had the conference at the court. She let it go. She didn't revoke his probation in light of this, in light of defense counsel's representations. I believe it was February 2024. He was working to wean himself off. He was working to do all of this. She decided not to revoke his probation, not to sentence him to an interim incarceration. Does that point to Roe v. Wade? Yes. Yes, Your Honor. And she didn't. And then there was an egregious incident, the Roe v. Wade incident here, where he threatened someone with an imitation firearm. She brought him back to court. And in response to an argument that his sort of drug history should be a mitigating factor here, she did point out that he had failed to provide any sort of treatment provider after repeated requests for that. Your Honor, just on that point, I do think that the question of a treating physician is a little bit of a red herring here. I think that the issue here, and as defense counsel pointed out, there was a submission from a physician who, just to be clear, it is in the record who sort of says that some people are prescribed both medical marijuana and oxycodone, with the idea being that the opioid being the medication that is actively attempted to be tapered off. Your Honor, my understanding of the record here is she's concerned that that is not happening. So regardless of whatever the letter is from a physician, the facts here support that is simply not the case here. He had continued to use oxycodone by the time of sentencing later. There were some drug tests pending at the time. There wasn't a positive drug test for a bit of time for oxycodone, at least. The issue was that the record prior to that just wasn't supporting the tapering off as well. Ms. Phillips, before you sit down, what's the government's position on the defendant's eligibility for court-appointed counsel? Yes, Your Honor. We were sort of discussing that just now. I don't think it's something that ever came out in the district court or something that was ever discussed. What's your position on it now? Your Honor, I don't think we've ever seen the settlement or sort of know the status of that. So I just don't know that we have a position on that now. I think the government doesn't want to know. Ms. Cassidy just admitted that he received the money. All right, thank you very much. Just to clarify, I don't know actually whether he received the money. I assume he did, because it had happened a couple of years ago. OK, so now in response to the question asked by Judge Park about, well, didn't Judge Caproni let it go? Yes, she did let it go. It wasn't just, well, I'm not going to violate him. This is what happened. At the end of the hearing, where all the evidence was presented about his nurse practitioner, and that was his provider, and that was legal, and he got the medical marijuana from a place that he was referred to by his court appointed therapist, and they were separate, and they always had to be separate, the probation officer said, the court asked to hear from the probation officer. What does probation recommend? Your Honor, said the probation officer, everything that defense impetus has stated is correct. I'm in communication with his therapist at St. Mark's. He reports as instructed. He's compliant. He checks in. He has no issues. His communication is great. He has full-time employment, which he had at that time. Quite frankly, I don't have any issues with him. I would say, let's continue to monitor him and hope that he wanes off the oxycodone. The court says, OK, all right, then I'm going to let this go. I hope he can get himself off oxycodone, because it is a difficult and bad drug to be on all the time. And after that, that is what Mr. Batista did. And the court accepted that, based on the drug tests and based on defense counsel's representation, that he had gotten off oxycodone. He was still taking marijuana, but he had gotten off oxycodone. So as my friend says, contrary to that, she is no longer, at the time of sentencing, she is no longer concerned that he's still on oxycodone. She understands that he's gotten himself off. And now to address the argument that the malingering fact finding, the court's factual finding, that she didn't think he had an ounce of pain and that he was malingering, that was not in response to his argument about why he couldn't work. It was directly in response to counsel's arguments, in mitigation, yes, but that he had had a very difficult year. They had lost twins. Two babies had died. And that he had, nonetheless, weaned himself off of oxycodone and was in still significant pain. It was in response to that that the court said, I don't think he's in an ounce of pain. I saw the video. I think he's malingering. And the counsel pointed out that in that video, which had been a year ago when he was arrested, he was still on the oxycodone. And on that video, he's not doing somersaults or anything. I mean, he's just standing and walking a few steps and it's in a small area. There was just no basis for the court to substitute her view for the view of the doctors that he actually was in pain, significant enough pain, to require prescription of oxycodone over a relatively long period of time, which is unusual. Your Honor, do you have any other questions? We're asking for a resentencing so that the court can reconsider, put aside those assumptions, and reconsider the sentence. That's all we're asking for. Thank you. Thank you. And we'll take the matter under advisement.